JUSTIN D. WHATCOTT, IDAHO STATE BAR NO. 6444
ACTING UNITED STATES ATTORNEY
KASSANDRA MCGRADY, IDAHO STATE BAR NO. 8455
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
1290 WEST MYRTLE STREET, SUITE 500
BOISE, ID 83702
TELEPHONE: (208) 334-1211

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>WILLIAM WALLS,<br><br>Defendant. | Case No. 1:24-cr-00013-BLW<br><br>**UNITED STATES' TRIAL MEMORANDUM** |

The United States of America, by and through Justin D. Whatcott, Acting United States Attorney for the District of Idaho, and the undersigned Assistant United States Attorney for the District of Idaho, hereby submits its trial brief in the above-captioned case. Trial is scheduled to begin on May 12, 2025. The Government anticipates the case will last approximately three days.

I.  **STATUS OF CASE**

   a.  **Trial Documents and Exhibits**

On May 5, 2025, the Government filed the following: (1) Government's exhibit list, which contains a description of the exhibits; (2) Government's witness list; (3) Government's

UNITED STATES' TRIAL MEMORANDUM - 1

proposed jury instructions; (4) Government's proposed voir dire; and (5) Government's proposed verdict form. On May 2, 2025, the Government provided the Defendant with a numbered copy of Government's Exhibits 1001 through 1051 (excluding the bathroom video that depicts child sexual abuse materials/child erotica). The bathroom video has been made available for Defense Counsel to review. The Government will disclose any additions to the exhibit list to the Defendant and the Court immediately upon determining that the exhibit will be presented at trial. To date, the Government has not received any reciprocal discovery from the Defendant.

    **b. Witnesses**

On December 18, 2024, the Government filed a Notice of Intent to Introduce Expert Testimony of Detective Cameron Cowdery (ECF No. 34). Detective Cowdery will testify regarding the forensic examination of the Defendant's cellphone.

The Government anticipates calling seven witnesses in its case-in chief, including the expert witness, three law enforcement witnesses, and three citizen witnesses (Minor Victim 1, Minor Victim 1's mother, Minor Victim 1's stepmother).

The Government is requesting the following accommodations for Minor Victim 1 during her testimony:

- That the Court permit counsel for the Government and the Defendant to question Minor Victim 1 from a chair that is placed in close proximity to the witness box as opposed to across the room at the podium.

- That the Court permit Minor Victim 1 to have a small stuffed animal with her during her testimony. The stuffed animal will remain at her side in her chair and outside the presence of the jury.

UNITED STATES' TRIAL MEMORANDUM - 2

The Government has asked Defense Counsel to stipulate to these procedures. To date, Defense Counsel has not informed the Government of his position.

Federal Rule of Evidence 611 states that: "The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment."

Here, these minimal accommodations will make the child feel more comfortable, make her less vulnerable to distraction, and will permit her to focus on the questioning. The Court, in its discretion, can permit the accommodations to effectively ascertain the truth at trial. The Government has no objection to a jury instruction that instructs the jury not to draw any inferences from the fact that a different procedure was followed for the child witness.

  c. **404(b) Notice**

On March 28, 2025, the Government filed a Notice of Intent to Introduce 404(b) evidence. (ECF No. 37). The Defendant moved to strike the Notice, arguing that the Notice was insufficient, and alternatively, that the evidence was inadmissible under Rule 404(b). (ECF No. 40). On April 30, 2025, the Court issued a Memorandum Decision and Order, provisionally ruling that the evidence is admissible as inextricably intertwined with the charged conduct and, alternatively, under Rule 404(b) to prove knowledge, intent, or motive as it relates to the charged conduct. (ECF No. 50).

  d. **Defendant's Motion to Suppress**

On April 14, 2025, the Defendant filed a motion to suppress statements he made to law enforcement. (ECF No. 38). On April 18, 2025, the Government informed the Court and Counsel that it does not intend to introduce the Defendant's statements in its case-in-chief at trial. (ECF

UNITED STATES' TRIAL MEMORANDUM - 3

No. 39). However, the Government may seek to admit the statements for impeachment depending on what transpires at trial. Given the Government's position, the parties agree that the Defendant's motion is moot.

### e. Trial Stipulations

On May 2, 2025, the Government filed the following stipulation:

- Stipulation of Fact Regarding Devices Mailed, Shipped, and Transported in and Affecting Interstate and Foreign Commerce (ECF No 51).

The Government will request that the Court read the stipulation to the jury during the Government's case-in-chief and incorporate the stipulation into the jury instructions.

### f. Discovery

The Government has complied with its discovery obligations, including its obligation to provide Jencks material. The Government continues to disclose newly-obtained information as it receives it. The Government has permitted Defense Counsel access to the bathroom video that has not been provided in discovery.

To date, the Defendant has not provided reciprocal discovery or any expert witness notices. The Government will seek to exclude any undisclosed documents or materials the Defendant attempts to use at trial other than those used only to impeach a Government witness, and may object to any expert witness.

The Ninth Circuit has held that a defendant's failure to comply with his or her discovery obligations under Federal Rule of Criminal Procedure 16(b)(1)(A) can result in exclusion of evidence at trial. *See United States v. Scholl*, 166 F.3d 964 (9th Cir. 1999) (upholding district court's decision to exclude defense evidence due to defendant's strategic decision to withhold discovery until the last minute); *United States v. Aceves-Rosales*, 832 F.2d 1155, 1156-57 (9th

Cir. 1987) (holding that district court did not abuse discretion in precluding medical report that the defense wished to introduce in case-in-chief but which it disclosed for the first time after the government had rested); *United States v. Moore*, 208 F.3d 577, 578 (7th Cir. 2000) ("courts are entitled to exclude evidence that should have been produced during reciprocal discovery in criminal cases").

## II.     FACTUAL BACKGROUND

On November 20, 2023, an adult female (hereinafter "Reporting Party") went to the Nampa Police Department to report that the Defendant had video recorded her daughter while she was taking a shower. During an interview with Reporting Party, she explained that she had known the Defendant since approximately June or July of that year and considered him a good friend.  She stated that the Defendant would often babysit her children at his apartment in Nampa.  She further stated that her children really liked going to his home and would spend the night just for fun.

According to Reporting Party, she noticed that her daughter (referred to in the Indictment as Minor Victim 1) had been acting quiet and withdrawn since returning from a sleepover at the Defendant's residence. Minor Victim 1 eventually disclosed that she had been playing on the Defendant's cellphone while at the sleepover and found a video that showed her in the shower at the Defendant's residence. Minor Victim 1 said that she did not say anything to the Defendant about the video but had deleted the video off his phone. Minor Victim 1 told her mother she no longer felt safe around the Defendant and did not want to go back to his apartment.

After Reporting Party learned this information, she went to the Defendant's apartment and asked to look at his cellphone. She did not explain why she wanted to look at the phone. When the Defendant allowed her to look at his phone, she located a video depicting Minor

Victim 1 in the shower. The video was in the deleted files on the cellphone. Reporting Party sent herself the video from the Defendant's cellphone through an iCloud link. Reporting Party confronted the Defendant about the video, and he told her that he did not know his phone had recorded the video.

Reporting Party provided law enforcement with a copy of the video. When detectives viewed the video, they discovered that the video depicted Minor Victim 1, as well as her two younger sisters (referred to in the Indictment as Minor Victim 2 and Minor Victim 3). The video begins by showing a male (identified as the Defendant because his face is in the video) setting up a camera and placing it where the camera is recording in front of the bathtub area. The Defendant also places a pile of clothes in front of the camera. Minor Victim 1 appears to undress and get in the shower. At one point, the Defendant is standing at the shower curtain talking to the child. The Defendant then tells Minor Victim 1 that he is going to wake up her sisters. A short time later, Minor Victim 2 and Minor Victim 3 enter the bathroom and begin changing their clothes. Both children are outside of the direct view of the camera, so their nude bodies are not captured. However, Minor Victim 1 opens the shower curtain at several points during the video and her nude body is visible. When Minor Victim 1 gets out of the shower and walks in front of the camera, her nude chest and genitalia are visible to the camera. As she dries off, her nude genitals are visible to the camera multiple times.

On November 21, 2023, the Nampa Police Department arrested the Defendant at his residence on state charges of sexual exploitation of a child and video voyeurism.[1] Once he was taken into custody, law enforcement executed a state search warrant to seize his cellphone and

---

[1] The state charges were later dismissed in favor of federal prosecution.

UNITED STATES' TRIAL MEMORANDUM - 6

other electronic devices from his residence. During the search of the residence, officers located the Defendant's cellphone on the couch in the living room.

Detectives interviewed the Defendant. At first, the Defendant told detectives that he set his phone down in the bathroom and it had accidentally recorded the video. He stated that if he had known the video was on his phone, he would have deleted it. The Defendant admitted that it looked like he had set up his phone to purposefully record but stated that the recording was an accident. He further claimed that his phone was broken and tended to randomly record all the time without his knowledge. Later in the interview, the Defendant stated that he did not know why he had recorded Minor Victim 1 and acknowledged that he pushed the record button on the phone. When asked what he expected to get from the recording, he responded "them taking a shower." The Defendant then said that he had Minor Victim 1 get in the shower, propped up the phone, and "did it for some reason." [2]

The three victims participated in forensic interviews but made no disclosures of sexual abuse. The victims were reluctant to talk about the Defendant during the interviews. However, the interviews revealed the dynamics of the Defendant's relationship with the victims, including that that he would provide them food they enjoyed, would give them treats and toys, and would let them do fun activities while at his home. The interviews also revealed that the Defendant would sleep with Minor Victim 1 on a mattress in the living room during sleepovers and would assist the victims with showering. The victim's mother confirmed the nature of the relationship and explained that her children enjoyed spending time with the Defendant because his house was the "fun" house.

---

[2] The Government has agreed not to use the Defendant's statements during the interview in its case-in-chief at trial. However, the evidence may be admissible as impeachment depending how the trial transpires.

UNITED STATES' TRIAL MEMORANDUM - 7

Pursuant to a federal search warrant, law enforcement forensically examined the Defendant's cellphone. On the cellphone, law enforcement located the bathroom video depicting the three minor victims. The video had been deleted from the cellphone but was recovered within a database associated with iCloud sharing. EXIF data from the cellphone shows that it was taken on November 10, 2023. Law enforcement also located a second video (much shorter in length) that showed Minor Victim 1 on the bathroom floor with no shirt on. Later, it shows her wearing a shirt, socks, and no pants. EXIF data shows that this video was recorded immediately after the other bathroom video. The second video had also been deleted from the cellphone but was recovered within a database associated with iCloud sharing.

On January 9, 2024, a federal grand jury returned a three-count Indictment charging the Defendant with three counts of attempted sexual exploitation of children, in violation of 18 U.S.C. § 2251(a), related to the production of the bathroom video depicting the three minor victims (one count for each victim).

## III. STATUTES AND ELEMENTS OF THE OFFENSES

Counts One Two, and Three of the Indictment charge the Defendant with an attempted violation of Title 18, United States Code, Section 2251(a) (Sexual Exploitation of a Child), which provides, in pertinent part:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in… any sexually explicit conduct for the purpose of producing any visual depiction of such conduct… shall be punished …, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

Count One relates to Minor Victim 1 (born in 2014), Count Two relates to Minor Victim 2 (born in 2015), and Count Three relates to Minor Victim 3 (born in 2015). To sustain its burden of proof, the Government must prove beyond a reasonable doubt:

1. On or about the dates alleged in the Indictment, Minor Victim 1, Minor Victim 2, and Minor Victim 3 were under the age of eighteen years;

2. That the Defendant attempted to knowingly employ, use, persuade, induce, entice, or coerce Minor Victim 1, Minor Victim 2, and Minor Victim 3, to take part in sexually explicit conduct for the purpose of producing a visual depiction of that conduct;

3. The visual depiction was produced using materials that have been mailed or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.; and

4. The Defendant did something that was a substantial step toward committing the crime.

A "substantial step" is conduct that strongly corroborated a defendant's intent to commit the crime. To constitute a substantial step, a defendant's act or actions must unequivocally demonstrate that the crime will take place unless interrupted by independent circumstances. Mere preparation is not a substantial step toward committing the crime.

Jurors do not need to agree unanimously as to which particular act or actions constituted a substantial step toward the commission of a crime.

### a. First Element

With respect to the first element, Minor Victim 1 will likely testify as to her date of birth and age, as well as the ages of Minor Victim 2 and Minor Victims 3 and will identify herself in a screenshot from the video. The mother and stepmother of the minor victims will further establish

the ages of the victims at the time the bathroom video was recorded and identify the victims in the video. The Government intends to show the witnesses screenshots from the bathroom video that do not contain nudity so as to minimize the trauma to the witnesses and the jury's exposure to explicit images. However, the unredacted video will be played for the jury in the Government's case in chief. The video itself will make it clear that the victims were minors at the time the video was recorded.

### 2. Second Element

With respect to the second element, the evidence will show that the Defendant intentionally, and surreptitiously, recorded the minor victims in the bathroom. The Defendant was able to gain the trust of the victims and their family members and thus the victims were permitted to spend the night at his residence. Similarly, the relationship he fostered with the victims made them comfortable enough to shower and change at his home.

On the morning of the incident, the Defendant propped up his cellphone on the bathroom counter and activated his camera. He then leaves the bathroom and comes back in with Minor Victim 1 so that she can shower. He later wakes up Minor Victim 2 and Minor Victim 3 and brings their clothing into the same bathroom for them to change while the camera is recording. At one point, the Defendant looks at the camera and adjusts it to get a different angle (closer to where Minor Victim 3 is changing) while capturing more of the shower area. The Defendant later tells Minor Victim 1 that she does not need to wear pants and leaves her with only a shirt, socks, and underwear. Importantly, the camera starts right before Minor Victim 1 begins to shower and ends when she is done with the shower and the other victims have changed. The evidence will establish that the Defendant took all these actions because of his sexual interest in the victims and because he wanted to capture them changing and showering.

UNITED STATES' TRIAL MEMORANDUM - 10

Two aspects of the second element will likely be at issue in this trial: (1) whether the Defendant "used" the minor victims as contemplated by the statute and (2) whether he intended to capture the victims engaged in sexually explicit conduct. Importantly, the Defendant is charged in all three counts with *attempt*. Thus, the Government does not have to prove that the Defendant was successful in capturing the victims engaged in sexually explicit conduct. Just that he intended to do so.

First, with regard to the "use" element, the Ninth Circuit, along with several other circuits, "broadly" interpret the term. *United States v. Laursen*, 847 F.3d 1026, 1033 (9th Cir. 2017) (citing cases). In *Laursen,* the Court adopted the "plain meaning" of the term "use" in the context of § 2251(a) and explained that "use" means "to put into action or service," "to avail oneself of," or to "employ." *Id*. at 1032 (quoting Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/use). The use element does not require a defendant to cause a minor to engage in sexually explicit conduct, it only requires that the minor be the subject of a visual depiction. *United States v. Mendez*, 35 F.4th 1219, 1222 (9th Cir. 2022). In *Mendez*, the Court held that the only active conduct required to meet the "use" element was the act of the perpetrator placing hidden cameras in a teenage victim's bedroom. *Id.*

Other decisions and courts have "broadly interpreted the 'use' element of the statute." *Laursen*, 847 F.3d at 1033 (9th Cir. 2017) (citing *United States v. Sirois*, 87 F.3d 34, 42 (2d Cir. 1996) (defining "use" as occurring whenever a minor is the subject of the photography); *United States v. Wright*, 774 F.3d 1085, 1090 (6th Cir. 2014) (use is "fully satisfied for the purposes of the child pornography statute if a child is photographed in order to create pornography"); *United States v. Fadl*, 498 F.3d 862, 866 (8th Cir. 2007) (same); *Ortiz-Graulau v. United States*, 756 F.3d 12, 18-19 (1st Cir. 2014) (same). The "use" element can be satisfied by surreptitious

UNITED STATES' TRIAL MEMORANDUM - 11

photographs or videos where the victims may be unaware of the Defendant's conduct. *See Mendez*, 35 F.4th at 1219; *United States v. Boam,* 69 F.4th 601, 608 (9th Cir. 2023), cert. denied, 144 S. Ct. 1345 (2024).

Here, the minor victims are the subject of the video. Although they do not appear to be aware of the recording, they are captured in the video in various stages of undress. The evidence will show that this happened by design. The Defendant set up the camera, led the children into the bathroom, and had them shower and change. The children were "used" as contemplated by the statute.

Second, regarding the sexually explicit conduct element, the evidence will show that the Defendant intended to capture the victims engaged in the lascivious display of their genitals or pubic areas. Typically, the six *Dost* factors are used as "a starting point" for determining whether a particular image or video is ''so presented by the photographer as to arouse or satisfy the sexual cravings of a voyeur.'" *United States v. Hill*, 459 F.3d 966, 972 (9th Cir. 2006) (quoting *Wiegand*, 812 F.2d at 1244); *United States v. Dost,* 636 F. Supp. 828, 832 (S.D. Cal. 1986). The six factors are:

1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;

2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

4) whether the child is fully or partially clothed, or nude;

5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

UNITED STATES' TRIAL MEMORANDUM - 12

      6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

S*ee also Dost,* 636 F. Supp. at 832.

      Furthermore, in *United States v. Wiegand*, 812 F.2d 1239, 1244 (9th Cir. 1987), the Ninth Circuit made it clear that "lascivious exhibition" looks to the intent of the producer or editor of an image, not to the behavior or intent of the victim. Thus, "lasciviousness is not a characteristic of the child photographed but of the exhibition which the photographer sets up for an audience that consists of himself or like-minded pedophiles." *Id*. Accordingly, in *Wiegand*, lasciviousness was found though a picture of a naked ten-year-old child suggested "neither sexual willingness nor sexual activity," but because the picture was "an exhibition. The exhibition was of the genitals. It was a lascivious exhibition because the photographer arrayed it to suit his particular lust." *Wiegand,* 812 F.2d at 1244. "Each of the pictures featured the child photographed as a sexual object" and were "presented by the photographer as to arouse or satisfy the sexual cravings of a voyeur." *Id*.

      Here, the video depicts Minor Victim 1 completely nude with her genitals and pubic area visible. At times, her genitals are very close to the camera. Minor Victim 2's pubic area is briefly visible to the camera even though her genitals are not. All three victims are in inappropriate attire because they are undressing or showering in front of a camera and the video was clearly intended to elicit a sexual response in the viewer. The Defendant had no other reason to record such a video. The Government does not have to prove that the *Dost* factors are satisfied. Only that the Defendant intended to capture a depiction that would satisfy the *Dost* factors. Here, there will be ample evidence of the Defendant's intent. Admittedly, the evidence will not show that the victims' attitude or behavior in the video was lascivious. Nonetheless, the evidence will show

UNITED STATES' TRIAL MEMORANDUM - 13

that the Defendant had a sexual intent in recording the video and set out to capture the minor victims' nude body parts, including their genitals.

### 3. Third Element – Interstate Commerce

The video in question was recorded with the Defendant's iPhone XR. This is clear from the video itself, as well as the EXIF data associated with the video. To streamline the presentation of evidence at trial, the Government and the Defense have stipulated that the Defendant's cellphone was mailed, shipped, and transported in and affecting interstate and foreign commerce.

## VI. Potential Issues at Trial

### a. Mental Health and/or Substance Abuse Issues

One or more of the Government's witnesses may have struggled with mental health or substance abuse issues. Evidence of any alleged substance abuse issues and mental health issues is irrelevant, unduly prejudicial, and constitutes improper character evidence under Rule 404(a).

Only relevant evidence is admissible. Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. Moreover, evidence of a witness's character or character trait is not admissible to prove that the witness acted in accordance with that character or trait. Fed. R. Evid. 404(a). Such evidence is only admissible if relates to truthfulness, bias or motive, the ability to perceive or recall events, or is otherwise a "pertinent" character trait. Fed. R. Evid. 404(a), 608, and 609; *see also United States v. Harris*, 501 F.2d 1, 9 (9th Cir. 1974); *United States v. Kohring*, 637 F.3d 895, 911 (9th Cir. 2011). Even if evidence is relevant, it may still be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403.

UNITED STATES' TRIAL MEMORANDUM - 14

Here, evidence of any alleged mental health or previous substance abuse issues has no bearing on the witnesses' veracity or truthfulness or whether a crime occurred in this case. The Government has no evidence that any mental health diagnosis or prior substance abuse issues have affected the witnesses' ability to recall or perceive events related to the case. This evidence can only serve to paint the witnesses in a bad light and prejudice the jury and should be excluded. To the extent the Defendant believes this evidence is admissible, the Government requests that the Defendant raise the issue with the Court outside of the presence of the jury before attempting to introduce the evidence.

### b. Prior criminal charge

In 2019, one of the Government's witnesses was charged with a felony drug offense. The witness received a withheld judgment and successfully completed supervision. The charge was dismissed in 2022. Evidence of the charge is irrelevant, unduly prejudicial, and is not admissible under Rule 609.

Rule 609(a) states that a criminal conviction, punishable by more than a year in prison, must be admitted, subject to Rule 403, in a criminal case where the witness is not a defendant. Evidence of any crime regardless of the punishment, must be admitted if the court can readily determine that the crime involves a dishonest act or false statement. However, Rule 609(c) provides that evidence of a conviction is not admissible if the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding that the person has been rehabilitated.

Here, even assuming the withheld judgment constitutes a conviction, the conviction does not relate to veracity or truthfulness. Further, the conviction was ultimately dismissed following a successful period of supervision/rehabilitation. Thus, the conviction is not admissible under

UNITED STATES' TRIAL MEMORANDUM - 15

609. Even if the conviction does not fall under the prohibition in Rule 609(c), the conviction is inadmissible under Rule 403 because any minimal probative value is substantially outweighed by the danger of unfair prejudice. To the extent the Defendant believes this evidence is admissible, the Government requests that the Defendant raise the issue with the Court outside of the presence of the jury before attempting to introduce the evidence.

### VII. CONCLUSION

The evidence will establish that the Defendant is guilty beyond a reasonable doubt of all counts charged in the Indictment.

Respectfully submitted this 5th day of May, 2025.

        JUSTIN D. WHATCOTT
        ACTING UNITED STATES ATTORNEY


*/s/ Kassandra J. McGrady*
KASSANDRA J. MCGRADY
Assistant United States Attorney