Thomas Monaghan, ISB #7675
Thomas Monaghan Law, PLLC
409 S. 8th St.
Room 205
Boise, ID  83702
(208) 813-4766
tom@tmonaghanlaw.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

(HONORABLE B. LYNN WINMILL)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs<br><br>WILLIAM E. WALLS,<br><br>        Defendant. | Case No: 1:24-cr-00013-BLW<br><br>**RESPONSE TO GOVERNMENT'S MOTION IN LIMINE** |

William Walls, through counsel, hereby responds to the government's motion in limine, in which it seeks the Court's advance ruling on the admissibility of *26 screenshots that it has created derivatively from a single video recording forming the basis for the charges against Mr. Walls*.  The government wants to not only use these screenshots in its in-court presentation, it wants the Court to admit these 26 selectively chosen screenshots as *substantive evidence* – not merely for demonstrative purposes.  Mr. Walls objects to the admission of any and all screenshots made by the

**Response to Government's
Motion in Limine - 1**

government for litigation purposes as substantive evidence for the jury's consideration.

Mr. Walls objects to their admission under Federal Rules of Evidence 401, 402, and 403 and his due process rights under the United States Constitution. The government should not be able to manufacture evidence derived from the single offending video it claims violates 18 U.S.C. § 2251(a) to be admitted at trial as their own substantive exhibits when it already will introduce the video from which these screenshots were taken – not by Mr. Walls, but by the government and/or its investigators.

## Shower Video

The defense requests that prior to ruling on the government's request, the Court view the actual video recording that forms the basis for the charges against Mr. Walls, for the context of the government's request is critical. As Judge Trott observed in United States v. Curtin, 489 F.3d 935, 959 (9th Cir. 2007), "One cannot evaluate in a Rule 403 context what one has not seen or read." The defense position is that this case presents issues very similar to those the Court confronted in United States v. Boam, 4:20-cr-00188-BLW, affirmed, 69 F.4th 601 (9th Cir. 2023); however, the government has nothing remotely approaching the "overwhelming" evidence that was presented in Boam's trial to demonstrate Mr. Walls' specific intent to commit the offense of sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a). Because the government will introduce the actual video in question into evidence, Mr. Walls

**Response to Government's**
**Motion in Limine - 2**

respectfully contends that any resulting probative value of these duplicative screen shots is diminished to the point that their probative value would be substantially outweighed by the danger of unfair prejudice. It would also result in the needless presentation of cumulative evidence of highly inflammatory evidence that was not created or even viewed by Mr. Walls.

The defense incorporates the factual background set forth in the defense's motion to suppress Mr. Walls' post-arrest statement and asks that it be considered here. To summarize, Mr. Walls met the mother of the children in question at a fast food restaurant, where their children played together. This led to Mr. Walls and the mother meeting for play dates for their children. Eventually, Mr. Walls began babysitting the children with the mother's approval.

The video in question is 23:56 minutes long. However, having just watched the video yesterday, there is less than 10 seconds of that where the child's genitals are visible. For the majority of the video, the child is showering; however, it must be emphasized: *the shower curtain is not transparent; it is opaque and has a blue print covering it as the court can see from the photos submitted by the government.* While one can tell there is a person taking a shower, the gender and approximate age are not discernible.

The government's description of the video in its trial brief is somewhat inaccurate on this point. While the government notes that the minor female "appears to undress and get in the shower," the video does not depict this; rather, the girl walks

to the far end of the shower/bathtub where she evidently undresses and enters the shower out of the camera's view. In fact, the only time her naked body is shown in the video is a brief time that she is partially exposed as she talks with her sisters who have entered the bathroom; the other time is when she gets out of the shower. When she gets out, the camera does show her pulling back the shower curtain and exiting. Although she is naked, having come directly from the shower, her genital area is only visible for a few seconds, and that area is not the focal point of the camera. Her genital area is visible briefly for several seconds as she walks towards the counter where her clothes are before the counter blocks the view of her genital area. At the counter, she briefly pauses before turning away from the counter, and back towards the shower, while yelling that she is out of the shower to Mr. Walls, who is not present in the bathroom at that time. She grabs a towel that was hanging on the shower and begins drying herself. While doing this, she is almost entirely out of the camera view on the left side; however, the green towel can be viewed occasionally, as it moves back and forth from her drying motions.

    At approximately 20:29, the girl wraps the towel around herself completely, leaving only her head and neck exposed. She dries her face and mouth with the towel the turns to the right and walks towards the counter. At 20:43, she opens up the towel on both sides with her arms, exposing her naked body for a couple of seconds before bending over and wrapping the towel around herself again. At this point, the towel is wrapped around her waist; her chest is exposed but not her genital area.

**Response to Government's**
**Motion in Limine - 4**

After several seconds, the girl unwraps the towel briefly, exposing her chest and stomach area, as she leans her head over slightly and wraps the towel around her torso and genital area. At approximately 21:06, she bends over completely – her bare back can be seen but much else due to the counter and clothes on top, which obscure the view.

At 21:16, the girl is still bent over at an angle where her naked body is not exposed. After a short time, she wraps the towel around her head, and at 21:32 she flips her hair back while the towel is still wrapped around her head. As she does, her bare chest is visible; however, her genital area is still blocked by the clothing on the counter. She flips her hair back a second time; however, her genital area is not exposed.

She subsequently bends down again, and, after grabbing a t-shirt briefly, she gets on the floor. At this point, only the slightest part of the green towel that is on her head can be seen due to the camera's vantage point on the counter. At approximately 23:24, she tells Mr. Walls that she has accidentally pulled a scab off. He bends over next to her; her head is still only visible. Shortly thereafter, Mr. Walls ends the recording

Thus, in this recording, which the children were unaware was being made, there are no prolonged periods where the child's genital area is viewed or the focus of the recording. While the other two girls enter the bathroom, the recording does not show them naked or even getting undressed; their naked bodies are not seen on the

**Response to Government's**
**Motion in Limine - 5**

video. The only other recording or image the government intends to introduce that was located on the phone was a 57-second video following this 23:56 one; however, the second video appears to have occurred immediately after the shower is completed; it does not show any of the children naked.

Law enforcement seized roughly 8 devices from Mr. Walls' home, all of which were subjected to forensic examination. Those examinations turned up no additional illicit videos or still images depicting these or other any other children. The examination also failed to produce any evidence that Mr. Walls ever went to websites where illicit images of children, or even clothed images of children, were the focus of the site. The forensic examinations did not find any evidence reflecting any sexual interest in children.

Mr. Walls has consistently maintained that he never viewed the video forming the basis for his charges. The detective who conducted the forensic examination of Mr. Walls' devices has indicated that his examination cannot disprove this claim. Thus, there is no proof that Mr. Walls ever watched the video between the date that it was created and when it was discovered by the girl nine days later, when Mr. Walls allowed her to have his phone to play games, and she discovered the shower video.

## Argument

Given the lack of substantive evidence, the government is attempting to bolster its case by now making any nice thing that Mr. Walls did for these children – which are the types of things any parent, guardian, or considerate babysitter would do with

young children in their care – into evidence of his "grooming" the children for sexual activity.[1] It also now seeks to make one video into 27 exhibits with the jury given all of the screenshots to focus on in the deliberation room. *To be completely clear, all of those 26 screenshots were created by the government or the investigators – Mr. Walls had no such screenshots on any of his devices.*

The government notably fails to support its motion with any authority supporting the admission of 26 screenshots that it has created when it already has in its possession the shower video, which it will introduce the video into evidence. The government's motion also fails to acknowledge or consider the prejudicial effect of these screenshots that were not created by Mr. Walls. The government offers three reasons why the Court should allow it to present these manufactured exhibits that it created as substantive evidence for the jury's consideration: (1) it needs these images to prove its case beyond a reasonable doubt; (2) allowing these screenshots in will limit the jury's exposure to the explicit material displayed; and (3) allowing the screenshots will streamline the presentation of evidence. None of these justifications can overcome the extreme unfair prejudice that will result if the government is allowed to introduce these manufactured images to go into the jury deliberation room

---

[1] The defense intends on objecting to the admission of this evidence again through another motion in limine to be filed after this response. While the Court initially indicated that this "grooming" evidence is admissible, the Court expressly indicated its ruling was without prejudice; the defense believes the Court's ruling was made without a full appreciation of the unique facts of this case.

**Response to Government's**
**Motion in Limine - 7**

where they can be focused on improperly.

Pursuant to Rule 403 of the Federal Rules of Evidence, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The government, as the proponent of this evidence, bears the burden of establishing its admissibility. See e.g., United States v. Bailey, 696 F.3d 794, 799 (9th Cir. 2012) (quoting United States v. Arambula-Ruiz, 987 F.2d 599, 602 (9th Cir. 1993).

Although the district judge has wide latitude in making Rule 403 decisions, this latitude is not unlimited. United States v. Hitt, 981 F.2d 422 (9th Cir. 1992). In Hitt, the Ninth Circuit noted that "where the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury." Id. Courts have recognized that allowing in unfairly prejudicial evidence also can infringe on a defendant's constitutional rights: "We inquire whether the evidence's probative value is so conspicuously outweighed by its inflammatory content, so as to violate a defendant's constitutional right to a fair trial." Lesko v. Owens, 881 F.2d 44 (3rd Cir. 1989).

In this case, the government has in its possession and will introduce at trial the video in question from which it derivatively created these 26 screenshots. Accordingly, the probative value of these 26 screenshots is diminished significantly

because they are duplicative of the best, original evidence – the shower video itself. Furthermore, they have minimal relevance given that Mr. Walls did not create these screenshots nor view the video in such a fragmented manner.

While they have minimal relevance, the screenshots present an outsized, enormous danger of unfair prejudice. "'Unfair prejudice,' … speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged. …So, the Committee Notes to Rule 4903 explain, 'Unfair prejudice within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" Old Chief v. United States, 519 U.S. 172, 180 (1997) (quoting Advisory Committee's Notes on Fed. Rule Evid. 403." Sex offenses against children, by their nature, are subject to immense societal opprobrium and disgust. See e.g. United States v. Curtin, 489 F.3d 935, 958 (9th Cir. 2007) (en banc) (describing sexual stories of adult-child sex as "abhorrent" and having an "inflammatory" and "reprehensible nature"); United States v. Cunningham, 694 F.3d 372, 386 (3rd Cir. 2012) (challenged videos of sexual acts involving children included "the kind of highly reprehensible and offensive content that might lead a jury to convict because it thinks that the defendant is a bad person and deserves punishment regardless of whether the defendant committed the charged crimes").

By extracting and freezing specific moments from a 23-minute recording, the government artificially transforms fleeting images into static, standalone exhibits

**Response to Government's**
**Motion in Limine - 9**

that jurors can fixate upon in the jury deliberations room. In other words, this manufactured evidence fundamentally alters how the jury perceives the recording by creating an illusion of prolonged exposure of the minor female's body, when the actual exposure was extremely brief. It would also emphasize snippets of the recording that support the government's narrative while divorcing those isolated images from their proper context. Finally, they would allow jurors to scrutinize frozen images in a manner that bears no relation to anything Mr. Walls did – the government cannot prove that he even watched the entire video, much less in the fragmented manner urged by the government. Allowing the jury to view these screenshots would also risk having jurors conclude that despite the government's creation of them, Mr. Walls was somehow complicit in their manufacture or that the government's exhibits reflect portions of the video that were of particular interest to him. This danger exists despite the fact

Next, the screenshots would be misleading to the jury, as they distort the actual evidence – they are a reduction of the actual video to isolated fragments reflecting a tiny proportion of the entire video. The government may believe that its selected screenshots reflect Mr. Walls' intent; however, that is the government's speculative theory – the jury should decide if the government has proven Mr. Walls' intent by watching the actual evidence not argumentative screenshots manufactured for purposes of litigation. Mr. Walls did not create or view these screenshots. Accordingly, any relevance they have is derived solely from being part of the shower

**Response to Government's**
**Motion in Limine - 10**

video. Since the video will be admitted, these would additionally be cumulative and distorting duplications that have minimal relevance but that present the concerns that Rule 403 empowers the Court to exclude based on the risks to Mr. Walls' ability to receive a fair trial. Not only are they duplicates, some of them are not even accurate duplicates because the government has modified them to put redaction bars on portions of the depicted scenes.

In United States v. Cunningham, 694 F.3d 372 (3rd Cir. 2012), the Third Circuit addressed whether the government's creation of excerpts of child pornography videos were properly admitted at the defendant's trial. Notably, the district court had excluded still images taken from the videos because they were "not representative of the actual evidence in this case." Id. at 379.

Although it is not an identical scenario, cases in which juries ask to have a portion of a witness's testimony read back during their deliberations provide analogous concerns. In United States v. Sacco, 869 F.2d 499, 502 (9th Cir. 1989), the Ninth Circuit held that "in the privacy of a jury room, a jury, unsupervised by the judge, might repeatedly replay crucial moments of testimony before reaching a guilty verdict." Citing Sacco, the Ninth Circuit held in United States v. Hernandez, 27 F.3d 1403, 1409 (9th Cir 2007) that it was clear error for the district court to enable the jury's undue emphasis on specific portions of the transcript – even though the district court admitted the entirety of the witness's testimony – both direct and cross-examination.

**Response to Government's**
**Motion in Limine - 11**

If anything, the risks of undue emphasis and unfair prejudice to Mr. Walls are even greater because the screenshots were not even created by Mr. Walls. The jury should not be allowed to adopt the government's emphasis on these fragments of the video because it cannot show that Mr. Walls actually placed that emphasis on them. In other words, the screenshots are an argumentative modification of the actual evidence in question. If there is any relevance in such extracted still images, it is extremely marginal and substantially outweighed by the Rule 403 concerns regarding unfair prejudice, misleading or confusing the jury, and presenting cumulative evidence in addition to the video itself.

The government offers no authority to support its admission of 26 screenshots that it created as substantive evidence to go into the jury deliberation room. Instead, it insists it needs these screenshots to prove Mr. Walls' guilt beyond a reasonable doubt. In other words, it claims that it cannot sufficiently prove Mr. Walls' intent without these distorted still images that it had to extract and now wishes to have the Court approve the jury to emphasize in the privacy of the deliberation room. If that is the case, the Court should dismiss the case based on the government's inability to prove its case based on the actual evidence. The government's statement is a telling admission of the shortcomings in its proof – it has had to go to these lengths of creating 26 individual standalone exhibits that are not what Mr. Walls created, possessed, or viewed. If the government cannot prove Mr. Walls' intent and overall guilt based on the actual video in question, it cannot be permitted to alter that media

**Response to Government's**
**Motion in Limine - 12**

to make it more persuasive to a jury – regardless of the absence of evidence that Mr. Walls ever focused in such a way on those portions of the video.

Furthermore, despite being necessary for the government to prove its case beyond a reasonable doubt, the government only apparently created and disclosed them on or about May 2nd, merely 6 days ago.  If they were so desperately needed, one would imagine they would have been provided to the defense at such a juncture. The reality is that the government wants the Court to approve the admission of these exhibits – which are more akin to demonstrative materials used by parties when presenting argument to a jury – as substantive evidence of Mr. Walls' guilt when he never viewed, much less created them.

Minimizing the jury's exposure to explicit imagery also fails to support the admission of these manufactured images.  First, the portions of the video the government contends amounts to lascivious display of the genital area of the girl are but a small fraction of the overall video. This is not a situation where the government has multiple videos or images of a horrific nature; rather, the jury in this situation would be called upon to view the offensive images in question for a very short time. Furthermore, putting aside the legal definitions for a moment, there is nothing sexual or lascivious in the manner in the video – the video very briefly captures her exiting the shower and drying off; there is no sexual acts or display of her genital area.  \

Finally, the government's desire to "streamline" the trial through these screenshots should be rejected as a ground for their admission.  This trial is going to

**Response to Government's**
**Motion in Limine - 13**

be fairly short already, and there is only this single shower video that the government is presenting to support the charges against Mr. Walls. Additionally, the amount of streamlining that the government believes will be accomplished by presenting 26 additional exhibits – each of which will have to be evaluated and admitted by the Court during the trial – is highly questionable. It does not appear that much time would be saved through the government's proposal versus simply playing the portion of the video the government wants to highlight in its argument. Even if there were, desires to streamline this three-day trial cannot justify the admission of these exhibits or outweigh Mr. Walls' constitutional rights to a fair trial.

## Conclusion

The government's failure to present any precedent supporting what it wishes to do in this case – divide a single video into 26 screenshots and then admit *both* the video and those manufactured still images – is telling. In a case where it lacks much evidence of Mr. Walls' intent, it should not be allowed to simply gin up more exhibits by selecting the most damning images that are visible only for a split second from a 23+ minute video. There certainly is no precedent that undersigned counsel has found in hours of research on this issue that comes anywhere close to allowing the government to manufacture 26 exhibits to go with the jury into the jury room. The decisions in those cases where juries were permitted to have transcripts of witness testimony have often resulted in reversals after appellate review because the undue emphasis of portions of testimony do not fairly reflect the evidence as a whole.

**Response to Government's**
**Motion in Limine - 14**

For these reasons, Mr. Walls – with the same amount of fervency that the government insists it needs these exhibits admitted – urges the Court to deny the government's motion and to exclude all of the 26 proposed exhibits.

Date: May 8, 2025                    Respectfully submitted,

                                                        /s/Thomas Monaghan
                                                        Thomas Monaghan
                                                        Thomas Monaghan Law, PLLC
                                                        Attorney for
                                                        WILLIAM E. WALLS

<u>CERTIFCATE OF SERVICE</u>

THE UNDERSIGNED HEREBY CERTIFIES that on May 8, 2025, I caused a true and correct copy of the foregoing Response to Government's Motion in Limine to be served upon the individual/entity named below in the manner so indicated:

Kassandra McGrady and Erin Blackadar, Assistant United States Attorneys

United States Attorney's Office
1290 West Myrtle St
Boise, ID  83702

VIA ECF

<u>/s/Thomas Monaghan</u>

**Response to Government's
Motion in Limine - 16**